UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>TERRY CUNNINGHAM,<br><br>                Defendant. | Case No. 15-CR-83-1-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

On May 4, 2020, Terry Cunningham ("Defendant") filed a motion for compassionate release to which the Government responded. (Docket #304, #307). Defendant filed a reply brief and two supplements thereafter in support of his motion. (Docket #309, #310, #311). The Government submitted an additional response on July 27, 2020. (Docket #313). For the reasons discussed herein, the Court grants Defendant's motion.

**2.    RELEVANT FACTS**

    **2.1.    Defendant's Background**

Defendant is a 54-year-old inmate at Federal Correctional Institution ("FCI") Elkton. (Docket #307-3 at 1). He suffers from, among other things, morbid obesity, Meniere's disease (a disorder of the inner ear that causes vertigo and fluctuating hearing loss), stage III kidney disease, anemia, sleep apnea, hyperlipidemia, edema, and dermatitis. (*Id.* at 1–2; Docket #304-7 at 1, #304-3 at 1, #304-6 at 13–14).

In 2016, Defendant pled guilty to an information charging him with Conspiracy to Possess with Intent to Distribute and Distribute 100 Grams or More of Heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.

(Docket #189, #212). Defendant's partner, Cheryl McArthur, and other family members were also involved in this distribution scheme, which they ran out of Defendant's Milwaukee residence. (Docket #248 at 8). This Court sentenced Defendant to eighty-four months of imprisonment followed by four years of supervised release. (Docket #268 at 2–3). Defendant engaged in the offense conduct while on supervised release in another case, Case No. 98-CR-170-LA, in which he was convicted of Possession with Intent to Distribute Methadone. *See* (Docket #248 at 7–11, 22–24, 38). Defendant's tentative release date is August 18, 2022 and he is eligible for home detention on February 18, 2022. (Docket #304 at 3, #307 at 7 n.1).

### 2.2. FCI Elkton

Defendant has been incarcerated since November 2016 and has been at FCI Elkton since November 15, 2019. (Docket #268 at 2, #307-3 at 1). He seeks compassionate release from FCI Elkton due to COVID-19, which poses significant health risks to persons with some of Defendant's aforementioned medical conditions. Although the transmission of the virus can be prevented or delayed by taking certain precautions, such as frequent sanitizing and social distancing, it is difficult to carry out such practices most prisons,[1] and, allegedly, particularly difficult at FCI Elkton. *See* (Docket #304 at 7–12); *see also Wilson v. Williams*, 961 F.3d 829, 833-35 (6th

---

[1] Because "[c]orrectional and detention facilities can include custody, housing, education, recreation, healthcare, food service, and workplace components in a single physical setting," the Centers for Disease Control and Prevention has recognized that such facilities present "unique challenges" regarding the control of COVID-19 transmission amongst both inmates, staff, and visitors. Ctrs. for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited July 28, 2020).

Cir. 2020). As of July 28, 2020, there are 155 COVID-19 positive inmates, 9 inmate deaths, and 848 inmates have recovered at FCI Elkton.[2]

In its response, the Government mentions all of the efforts FCI Elkton has taken and continues to take to keep inmates and staff safe from COVID-19. *See* (Docket #313 at 4–5). For example, the prison has increased its testing and maintains general population, isolation, and quarantine units. (*Id.* at 5). The Government also points out that since it filed its last brief on May 15, 2020, no additional inmate deaths have occurred. (*Id.* at 4–5).

## 3. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court can modify a term of imprisonment, after the defendant has exhausted his administrative rights, if "extraordinary and compelling reasons warrant such a reduction." The reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id*. § 3582(c)(1)(A).

Commentary to the applicable policy statement explains that "extraordinary and compelling reasons exist" when "the defendant is suffering from a serious physical or mental condition [] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

The policy statement also requires that the Court determine whether "the defendant is not a danger" to others or the community "as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

---

[2]Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited July 28, 2020).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. *Id.* Pursuant to § 3553(a), when determining the sentence to be imposed the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4. ANALYSIS

   4.1. Exhaustion

Before granting a motion for compassionate release, the defendant must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or at least 30 days must have lapsed "from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). In its brief, the Government acknowledges that because thirty days have passed since the warden at FCI Elkton received, and denied, Defendant's request for compassionate release, Defendant has exhausted his administrative remedies. (Docket #304-2, #307 at 9). Therefore, Defendant satisfies this requirement.

   4.2. Extraordinary and compelling reasons

The Court finds that Defendant presents extraordinary and compelling reasons warranting his release. Several district courts have recognized that an inmate's medical conditions, in conjunction with both his or her living quarters and the status of the COVID-19 outbreak at one's prison, constitute "extraordinary and compelling reasons" for an inmate-

defendant's compassionate release. *See United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603, at *4 (S.D.N.Y. Apr. 24, 2020) (holding that defendant had established extraordinary and compelling reasons warranting her release due to her preexisting medical issues, which increased her risk of serious illness from and heightened susceptibility to COVID-19, and the nature of the outbreak at FCI Danbury); *United States v. Perez*, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) (finding that extraordinary and compelling reasons existed for compassionate release where inmate-defendant was unable to provide self-care due to his physical condition and being confined to a small cell where "social distancing [was] impossible . . . ."); *United States v. Somerville*, 2:12-CR-225-NR, 2020 WL 2781585, at *1, *9 (W.D. Pa. May 29, 2020) (granting release of inmate-defendant because his obesity, hypertension, and asthma "coupled with a showing of [a] sufficiently non-speculative risk of infection" at a prison with an "open, dorm-like shared space" where social distancing was "impossible"); *United States v. Brooks*, Case No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *6 (C.D. Ill. May 15, 2020) (determining that the defendant, who suffered from morbid obesity, severe and chronic asthma, and high blood pressure, and was recovering from recent surgery at an institution with a serious COVID-19 outbreak, had demonstrated extraordinary and compelling reasons for release).

According to the Centers for Disease Control and Prevention ("CDC"), those with chronic kidney disease or obesity (defined as a person with a body mass index of 30 or higher "are at increased risk of severe

Page 5 of 9
Case 2:15-cr-00083-JPS   Filed 07/29/20   Page 5 of 9   Document 316

illness from COVID-19."[3] Persons with hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19." Defendant suffers from all of these aforementioned conditions, to some extent. In light of the CDC's updated guidance which added "kidney disease" to its aforementioned list, the Government acknowledges that Defendant has established extraordinary and compelling reasons. (Docket #313 at 2). However, it argues that the Court must consider the totality of the circumstances, including the § 3553(a) factors, which the Court analyzes in Section 4.3, *supra*.

The Government urges the Court to consider whether the inmate is more likely to contract COVID-19 if he is released than if he remains incarcerated. Notably, the Government does not provide a citation to support its proposition. However, it is of no consequence in Defendant's case because the Court is sentencing Defendant to supervised release with a one-year term of home detention. Therefore, Defendant's exposure to the virus will certainly be limited by this condition.

### 4.3.  § 3553(a) FACTORS

The Court has concerns about granting Defendant's release in light of the § 3553(a) factors. Defendant's engaging in a heroin trafficking conspiracy while on supervised release for *another* drug-related offense shows blatant disregard for the law. Further, if the Court grants his release,

---

[3] Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019* (COVID-19): *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 22, 2020).

Page 6 of 9
Case 2:15-cr-00083-JPS   Filed 07/29/20   Page 6 of 9   Document 316

he would be going back to the location (his residence) where the trafficking took place and he would be staying with some of his co-defendants (his partner, Cheryl McArthur, and son, Najon Cunningham). Defendant's inability to work could potentially entice him to again turn to lucrative criminal activity. When considering the safety of the community, as it must pursuant to the Sentencing Guidelines policy statement, the Court is cognizant of the negative consequences that the drug trade has throughout a community. *See United States v. Body*, Case No. 18 CR 503-1, 2020 WL 2745972, at *2 (N.D. Ill. May 27, 2020) (explaining that if "seriousness of the crime" was the sole consideration, the Court would deny the defendant's motion for compassionate release because he was an "unrepentant drug dealer who has peddled dangerous substances" causing harm to users and the community).

The Court is also cognizant that Defendant has possessed firearms and illegal explosives in the past, which the Government argues makes him a danger to the community. *See, e.g.*, (Docket #248 at 22). The Court notes that the incident the Government points to occurred over two decades ago, in 1998. (*Id.*) Further, the Court believes that the conditions of supervised release with a term of home detention should abate the Government's concerns.

The Court notes that Defendant complied with all rules while on pretrial release in this case. (Docket #304 at 26). Defendant also states that he has had no disciplinary issues while incarcerated. (*Id.* at 3). He has completed over half of his term of imprisonment. Had Defendant served a *lesser* amount of time in prison, that would certainly undermine some of the factors outlined in § 3553(a). *See United States v. Jimison*, Criminal No. 4:08-CR-11-DPJ-LRA, 2020 WL 3213429, at *4 (N.D. Miss. June 15, 2020) (noting

that because the defendant had only served a "small fraction[]" of his sentence, "immediate release would not 'reflect the seriousness of the offense' or the need 'to provide just punishment for the offense' . . . .") (quoting 18 U.S.C. § 3553(a)(2)(A); *and United States v. Garcia*, No. 16-cr-719-2 (RJS), 2020 WL 2539078, at *3 (S.D.N.Y. May 19, 2020) ("Cutting [the defendant's] sentence in half would undermine its deterrent effect and would likely increase [the defendant's] chance of recidivism.").

In order to address the Court's concerns about punishment and deterrence, the Court will impose a term of home detention. Because Defendant has served more than half of his term of imprisonment *and* because Defendant will be subject to a term of home detention, the Court is satisfied that the updated sentence imposed will not undermine the factors outlined in § 3553(a)(2). If Defendant is genuinely fearful of his susceptibility to COVID-19 while incarcerated, then he should be deterred from committing future crimes or violating the conditions of his supervised release. *United States v. Grubbs*, CR16-228 TSZ, 2020 WL 3839619, at *3 (W.D. Wash. July 8, 2020) ("The Court, however, is persuaded that the potentially dire consequences to defendant's health if he violates the conditions of supervised release and is returned to custody will motivate him to be compliant and cooperative."). Thus, after giving much consideration to the § 3553(a) factors, the Court grants Defendant's motion and reduces his term of imprisonment to time served. The Court reduces Defendant's sentence conditioned upon a modification of the terms of Defendant's supervised release to add a requirement that he serve one (1) year of that release on home detention.

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #304) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Terry Cunningham's term of imprisonment is reduced to "time served";

**IT IS FURTHER ORDERED** that Defendant's conditions of supervised release are modified to include a term of home detention for one (1) year;

**IT IS FURTHER ORDERED** that the Government's motions to seal, (Docket #308, #314) be and the same are hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to immediately release Defendant Terry Cunningham from incarceration pursuant to the amended judgment, which follows.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge